IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NEW LIFE EVANGELISTIC CENTER, INC., <br> A Missouri Not-For-Profit Corporation <br><br> *plaintiff*, <br><br> v. <br><br> CITY OF ST. LOUIS, MISSOURI, <br> A municipal corporation <br><br> and <br><br> EDWARD ROTH, in his official capacity <br> as PUBLIC SAFETY DIRECTOR, <br> CITY OF ST. LOUIS, MISSOURI, <br><br> *defendants*. | Civil Action No. 4:12-cv-1077 |

**Memorandum in Support of Plaintiff's Motion to Dismiss Defendant City of St. Louis's Counterclaim**

COMES NOW Plaintiff, New Life Evangelistic Center, Inc., ("New Life"), by and through counsel to request that this court dismiss Defendants City of St. Louis, Missouri ("St. Louis) counterclaim for declaratory relief and states as follows:

## I.   BACKGROUND

### A.   New Life Evangelistic Center, Inc. and the outreach from Vandeventer

New Life is a Christian Church operated as a Missouri not-for-profit corporation, with over 40 years of experience providing for the needs of the homeless. On May 1, 2012, New Life entered into a one year lease agreement with the owner of certain real property located at 1600-1610 S. Vandeventer Ave.; 1612-1614 Vandeventer Ave.;

4345-4346 McRee Ave.; 4348 McRee Ave; and 4415 Lafayette Ave., in St. Louis, Missouri ("Vandeventer Property") to use the property for religious services and homelessness assistance.  The Vandeventer property is a vacant nearly two acre tract of ground with no permanent structures. (Exhibit 1 Rice Declaration)

At 11:00 am on May 16, 2012 New Life began erecting a 20' by 40' tent on the Vandeventer property, and had one porta potty delivered, on what had otherwise been vacant property. By Noon on May 16, 2021 New Life began to host a worship service under the tent on the Vandeventer property.  (Exhibit 1 Rice Declaration)

By 4:00 pm on May 16, 2012, fifteen (15) people were present on the Vandeventer Property for New Life's worship services.  The only structures on the property included the 40' by 20' tent and eight smaller tents.  No food preparation or storage was taking place on the property. No electrical services was being provided or generated for the property and no open fires were present on the property. (Exhibit 1 Rice Declaration)

At 5:00 pm on May 16, 2012 the City of St. Louis Department of Public Safety Division of Building and Inspection issued an emergency condemnation of the Vandeventer property.  Stating that pursuant to Section 120.1 of Ordinance #68788, being the Emergency Condemnation provisions of the International Building Code, an inspection of the property had been made, and that the inspection revealed that the building(s) and/or premise(s) pose and immediate or imminent danger to public health, safety or welfare… and they cannot be made reasonably safe without immediate evacuation… The violations that lead to this immediate or imminent danger were listed on the second page of the notice as "The building, structure or premises has been

2

constructed, exists or is being maintained in violations of this code or law. Sec119." (Exhibit 2)

At 6:30 pm on May 16, 2012 City of St. Louis Police officers arrived to disperse all present, and took into custody four people including Rev. Larry Rice, New Life's co-founder and President, for occupying a condemned building. (Exhibit 1 Rice Declaration)

St. Louis has previously allowed for the operation of temporary tent encampments throughout the City of St. Louis for extended periods of time, these encampments were slowly shutdown by St. Louis. (Exhibits 8 & 9) Prior to shutting down one encampment Defendant St. Louis had established rules for such encampments. (Exhibit 10 & 11)

**B.     City of St. Louis Building Code**

Per the emergency condemnation order of May 16, 2012 the Building Code of St. Louis can be found in Ordinance #68788. ("the Code") This Ordinance states that it is an amendment to the 2003 International Building Code with the 2009 International Building Code.

The intent of the Code is set out in section 103.1 which states:

The purpose of this code is to establish the minimum requirements to safeguard the public health, safety and general welfare through structural strength, means of egress facilities, stability, sanitation, adequate light and ventilation, energy conservation, and safety to life and property from fire and other hazards attributed to the built environment and to provide a reasonable level of safety to fire fighters and emergency responders during emergency operations." (Exhibit 3)

Section 119 of the Code establishes the powers of condemnation. (Exhibit 3)

Section 119 of the Code states: 119.1 Notification. If, upon making an inspection and examination of any occupied or unoccupied building, structure or premises, the building official finds one (1) or more of the defects described below, the building official shall notify in writing, as provided in Section 119.2, the owner(s) of said building, structure or premises, as recorded most recently in the City of Saint Louis Assessor's Office, the defects found in said building, structure or premises, and shall order them to proceed to properly demolish, repair, and secure or correct all conditions causing condemnation of said building, structure or premises within seven (7) days. This document is to be known as a Notice of Condemnation. If the conditions have not been corrected by the date listed in the notice, the building, structure, premises, or portion thereof or appurtenance thereto will be condemned and shall be required to be vacated, if occupied, and secured… (Exhibit 3) Section 119.1 continues and lists over 19 different possible defects. (Exhibit 3).

Section 119.1.1 provides for evacuation order and states: failure to comply. Any person who refuses to leave, interferes with the evacuation of other occupants, or continues any operation after having been given an evacuation order by the building official, except such person(s) who is directed to perform work to remove a violation or unsafe condition, shall be deemed in violation of this section whereupon it shall be the duty of the Police Department to immediately remove such person from said building, structure or premises and prevent anyone from re-entering the building, structure or premises until such time that the Police Department shall have been notified by the Division of Building and Inspection that the same is in a safe condition. Any person who

4

shall violate this section shall be guilty of a misdemeanor and subject to the penalties as set forth in Section Four. (Exhibit 3)

Section 119.1.3 of the Codes states: Failure to comply; authority to enter into contracts. If the owner(s) fail to comply with the order of the building official by the date indicated in the Notice of Condemnation, and in such a manner that can be approved by the building official, then such owner(s) shall have violated this code, and the building official shall be permitted to forthwith proceed to undertake and complete whatever work is necessary to eliminate the dangerous condition. The Building Commissioner shall have the authority to enter into contracts with no other review, signature or approval (except for insurance) from any other City agency. Such contracts shall be permitted to include, but not be limited to, demolition, environmental investigation, remedial work, professional or contractual services. Competitive bids shall not be required for emergency situations where there is a danger to life or property. The cost of such work performed by the building official, under the provisions of Sections 119 or 120 of this code, shall be paid for by the City of Saint Louis. The building official shall certify to the Comptroller the cost of such work, including the administrative costs incurred by the Division of Building and Inspection in performing said work, but in no event shall such administrative costs exceed ten percent (10%) of the contract price incurred by the Division of Building and Inspection in performing such work. The Comptroller, upon certification by the building official of the cost expended for said work, shall prepare bills for such work against the owner(s) of said building, structure or premises. In case said bills are not paid upon presentation, they shall be referred to the City Counselor, who shall proceed to collect same, by suit, or lien if necessary, and the amounts when

collected shall be credited to a special revolving fund for the purposes herein designated. (Exhibit 3)

Section 119.1.4 provide the City of St. Louis with even further enforcement of not allowing property to be leased or rented until coming into compliance with the building departments orders. And Section 119.1.5 allows the City of St. Louis to recover its costs from property owners. (Exhibit 3)

Section 120.1 of the Code defines the power of the building official in emergency measures and states:

> 120.1 Procedure. When, in the opinion of the building official, a building, structure or premises poses an immediate or imminent danger to the public health, safety or welfare, as defined in Section 118.1, the building official shall order the immediate evacuation and securing of said building, structure or premises, and shall be permitted to order all utilities to be disconnected without sending a notice. Each principle entrance shall be posted with a notice which reads as follows:
>
> DANGER
>
> THIS PREMISES IS UNSAFE AND HAS BEEN
>
> CONDEMNED
>
> ALL PERSONS ARE WARNED TO
>
> KEEP AWAY
>
> Any person who refuses to leave, interferes with the evacuation of other occupants, occupies or continues any operation after the property has been posted

6

pursuant to this section, except such person(s) who is directed to perform work to remove a violation or unsafe condition, shall be deemed in violation of this section, and it shall be the duty of the Police Department to immediately remove such person(s) from said building, structure or premises, and prevent anyone, unless approved by the building official, from re-entering the building, structure or premises until such time that the Police Department shall have been notified that the same is in a safe condition. The building official assumes no responsibility for persons entering upon said property, and said persons proceed at their own risk and assume all liability. (Exhibit 3)

## II. Standard for Preliminary Injunction

A district court has broad discretion when ruling on preliminary injunction requests. *Coca-Cola v. Purdy*, 382 F.2d 774, 782 (8th Cir. 2004). Traditionally, courts must analyze four factors: (1) whether there is a substantial likelihood that the plaintiff will succeed on the merits; (2) whether the plaintiff will be irreparably injured if an injunction is not granted; (3) whether an injunction will substantially injure the non-moving party; and (4) whether the public interest will be furthered by the injunction. Fed. R. Civ. P. 65; *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

### A. St. Louis will no be Irreparably Injured if an Injunction is not Granted

St. Louis will not be irreparably injured if this court does not grant an injunction. Defendant St. Louis has adequate remedies at law for any actual violations of its building code. St. Louis not only has condemnation powers under sections 119 and 120 of its

7

Code. (Exhibit 3) Defendant St. Louis has powers to correct conditions Code Section 119.3, and 120.6, and to collect its costs of correction Code Section 119.5 and 120.5. (Exhibit 3) In addition to these powers the Code also provides for enforcement through the municipal courts of the City of St. Louis.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.,* 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 506-507 (1959). When there is an adequate remedy at law, a preliminary injunction is not appropriate. *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734,738 (8th Cir. 1989)

If New Life were to actually establish a shelter without permit St. Louis has several remedies available at law to prevent such operation without permit. However, as stated throughout its responses New Life was engaged in religious services on May 16, 2012 when the Defendants placed the emergency condemnation order on New Life's property. (Exhibit 1 Rice Declaration)

St. Louis has used its police powers under the Code to shutdown other tent encampments within the City of St. Louis. (Exhibit 8 & 9). St. Louis has even gone so far as to establish ground rules for such encampments. (Exhibits 10 & 11). St. Louis has a remedy at law therefore it cannot establish irreparable harm.

### Conclusion

Wherefore having established that Defendant cross claim plaintiff City of St. Louis has an adequate remedy available under the law and that no irreparable harm would

8

be suffered New Life respectfully requests that the court dismiss City of St. Louis's cross claim with prejudice and for whatever other relief deemed just and warranted.

                                        Respectfully submitted,

                                        __/s/ Daniel Patrick Boyle__
                                        Daniel P. Boyle 50922MO

                                        The Boyle Law Firm, L.L.C.
                                        755 Rue St. Francois
                                        Florissant, Missouri  63031

                                        (314) 838-4500 (telephone)
                                        (314) 838-7727 (facsimile)
                                        Boylelawfirm@sbcglobal.net (e-mail)

Date: July 31, 2012                        A*ttorney for Plaintiff*

Certificate of Service

      A true and accurate copy of the foregoing was served upon the Defendants this 31st day of July 2012 by means of electronic filing with this court.

                                          __/s/ Daniel Patrick Boyle___
                                          Daniel Patrick Boyle