UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NEW LIFE EVANGELISTIC | ) |
| CENTER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:12CV1077 HEA |
| | ) |
| CITY OF ST. LOUIS and EDWARD | ) |
| ROTH, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction, [Doc. No. 2]. For the reasons set forth below, the Motion is granted.

## Facts and Background[1]

Plaintiff's Complaint alleges that Plaintiff, a Christian Church and a provider of a wide variety of services to homeless men, women and children in Missouri, Illinois, Kansas and Arkansas, is the lessee of certain property, to wit, 1600-1610 S. Vandeventer Ave.; 1612-1614 Vandeventer Ave.; 4345-4346 McRee Ave.; 4348 McRee Ave; and 4415 Lafayette Ave., in St. Louis, Missouri. The purpose of Plaintiff's lease is to use the property for religious services and

---

[1] The recitation of facts is taken from the allegations in Plaintiff's Complaint and is set out for the purposes of the pending motion only. The recitation in no way relieves the parties of necessary proof any stated facts.

homelessness assistance. There are no permanent structures on the property.

On May 14, 2012, Plaintiff informed defendant Roth, Director of Public Safety for the City of St Louis, that it intended to use the property for the placement of a 20' by 40' tent on the property in order to hold worship services for those in the community and others who would like to attend.

On May 15, 2012, Defendant Roth sent a response to Plaintiff which directed Plaintiff to facilities that provide shelter or other housing services, and laid out "vague parameters" of what was expected from shelters providing no corresponding ordinances, code citations or permit requirements Defendant Roth, according to the Complaint, did not respond to Plaintiff's request regarding religious services. Defendant Roth specifically stated an intent to condemn the property before it was even occupied by Plaintiff.

On May 16, 2012, Plaintiff began erecting the 20' by 40' tent on the property. Plaintiff also had one portable toilet delivered to the property. Thereafter, Plaintiff began to host a worship service on the property at noon on May 16, 2012. By 4:00 pm that day, 15 people were present on the property. At that time, the only structures on the property were the 20' by 40' tent and eight smaller tents. No food preparation or storage was taking place on the property, no electrical services were being provided nor generated for the property and no open

fires were present on the property.

At 5:00 pm on May 16, 2012, the City of St. Louis Department of Public Safety Division of Building an Inspection issued an emergency condemnation of the property. The alleged reason for the emergency condemnation was, pursuant to Section 120.1 of Ordinance #68788, the Emergency Condemnation provisions of the International Building Code, an inspection of the property had been made, and the inspection revealed that the building(s) and/or premise(s) pose and immediate or imminent danger to public health, safety or welfare… and they cannot be made reasonably safe without immediate evacuation… The violations that lead to this immediate or imminent danger were listed on the second page of the notice as "The building, structure or premises has been constructed, exists or is being maintained in violations of this code or law. Sec 119."

City police officers arrived to disperse all present and took four people into custody for occupying a condemned building.

Plaintiff claims its Due Process rights have been violated because it claims Defendants did not have a proper emergency to deny Plaintiff a hearing on the condemnation of the property. Plaintiff claims there was no immediate or imminent danger tot he public health, safety or welfare, the premises had not been occupied for more than five hours, there were restroom facilities available, no

open fires or flood source were on the property and the only structures on the property were tents that required no permits under the City Code. Further, Plaintiff claims there was no need for prompt action as only 15 people were present, no one person had been on the property more than five hours that day and prior to the arrival, there had been no other structures or occupancy of the property. Additionally, Plaintiff claims that Defendant City of St. Louis did not keep strict control over its monopoly of legitimate force because the person initiating the seizure improperly determined that it was necessary and justified in the particular instance, as no permits are required by the City Code for tents under 1000 square feet.

Plaintiff also claims that its First Amendment rights to free exercise of religion were violated. It claims it was engaging in the exercise of its religious beliefs through worship services and outreach to the homeless at the property and Defendants' actions paced a substantial burden on its religious beliefs of ministering to the homeless and conducting worship services on the property. Plaintiff alleges Defendants' action was without a rational basis.

## Discussion

Plaintiffs seek a preliminary injunction against the City of St. Louis from taking further action on the emergency condemnation order of May 16, 2012

issued by the City of St. Louis Department of Public Safety Building and Inspection division.² The Court concludes that Plaintiff is likely to succeed on the merits of its claim that the emergency order violated its due process and freed exercise of religion rights in issuing the emergency order without a hearing, which was not narrowly tailored to the government's interest in maintaining peace and order. As the other preliminary injunction factors are presumed when a likelihood of success on a First Amendment claim is shown, the Court will issue a preliminary injunction.

## Discussion

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981). "When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Minnesota Citizens Concerned for*

---

² Plaintiff apparently also seeks a declaration that the emergency condemnation order is null and void, since its Proposed Order includes a ruling that the order is null and void. Such a ruling is not yet ripe for determination.

*Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir.2012) (quoting *Phelps–Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir.2011), vacated on reh'g, 705 F.3d 845 (8th Cir.2012)).

**Likelihood of Success on the Merits**

Plaintiff argues that it is likely to succeed on the merits of both its due process claim and its First Amendment free exercise of religion claim.

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that the government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . ." *Phelps-Roper v. City of Manchester, MO*, 697 F.3d 678, 686 (8th Cir 2012).

The parties differ on what is actually at issue. Plaintiff argues that it did nothing in violation of any permit requirements and was merely exercising its First Amendment freedom of religion rights by erecting one 20' by 40' tent and eight smaller tents on its leased property for worship services. Defendants, conversely, argue that Plaintiff was planning a homeless encampment that would cause danger to the health and safely of the public.

Plaintiff contends that the city's actions were in violation of the due process clause in that there was no imminent threat of harm to anyone and therefore, there were no emergency circumstances which would give rise to action without a

hearing.

Plaintiff argues that the emergency condemnation without a factual basis for such action has denied it its ability to use its land for religious purposes. Moreover, the ordinance at issue imposes no objective standards for determining what poses an immediate or imminent danger to the public health and safety or welfare. While Defendant attempts to argue that the "intended" homeless encampment would cause widespread danger to the public safety and welfare, the evidence before the Court fails substantiate Defendant's concern. Quite simply, it appears Defendants acted too quickly in determining that Plaintiff's erection of tents posed an immediate or imminent danger to the public health, safety or welfare. Plaintiff has sufficiently satisfied the likelihood of success on the merits for the purposes of the issuance of a preliminary injunction.

**Remaining Dataphase Factors**

Because Plaintiff is likely to succeed on the merits of its free exercise of religion claim, the remaining *Dataphase* factors are generally deemed to be satisfied. *Swanson*, 692 F.3d at 870. Nonetheless, the Court concludes that the remaining *Dataphase* factors weigh in favor of a preliminary injunction. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably

constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). The City continues to prevent the enjoyment of Plaintiff's First Amendment right to free exercise of religion and thereby deals irreparable harm to Plaintiff. The equities and public interest are likewise in favor of an injunction. The City will suffer no harm, as there appears to be no immediate or imminent danger to public safety health or welfare through the presence of tents erected for worship services on vacant property. No cooking facilities have been set up, restroom facilities are available and the tents are of the size that require no permits. Plaintiff will remain bound to follow the same size restrictions and public safety ordinances that are generally applicable to the population.

Pursuant to Rule 65(c), the court "may issue a preliminary injunction ... only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to be wrongfully enjoined or restrained ." Fed.R.Civ.P. 65(c). The City was unable to articulate any harm that might occur if the Court were to issue a temporary injunction without assuming Plaintiff was planning on establishing a homeless encampment. The Court finds that a bond of a nominal amount would provide adequate security.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for preliminary

injunction, [Doc. No. 2], is granted, and that Plaintiffs shall be required to pay a bond of $100.00 in support thereof. A separate injunction shall issue in accordance with this memorandum.

Dated this 27th day of August, 2013.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE